CATHY SURWILLO AUSTIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Austin v. Commissioner
Docket No. 13172-80.
United States Tax Court
T.C. Memo 1985-22; 1985 Tax Ct. Memo LEXIS 607; 49 T.C.M. (CCH) 520; T.C.M. (RIA) 85022; January 14, 1985. *607 During 1972 and 1973, petitioner received cash and a house from a man to whom she was a companion. The man died in late 1973. In 1974, petitioner sued the man's estate for seven million dollars. She reached a settlement with the estate in late 1975 under which she received $42,500 (net, $19,000) and abandoned her other claims. Held: (1) The payments received by petitioner in 1972 and 1973 constitute gifts, excludable from income under sec. 102, I.R.C. 1954; the 1975 payment by the estate is includable in income under sec. 61(a)(1), I.R.C. 1954. (2) Liability determined for additions to tax under secs. 6651(a)(1) and 6653(a), I.R.C. 1954. Edward R. Joyce, for the petitioner. Henry Thomas Schafer, for the respondent. CHABOT MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and additions to tax under sections 6651(a)(1)[1] *608 (failure to file timely return) and 6653(a) (negligence, etc.) against petitioner as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
1973
$1,986.59
$99.33
1975
718.86
$179.71
162.80
Petitioner claims an overpayment in Federal individual income tax and an addition to tax under section 6651(a)(1) for 1975 in the amounts of $2,537.14 and $634.29, respectively. The issues for decision [2] *609 are as follows: (1) Whether certain amounts received by petitioner from Lester A. Crancer, Sr., in 1972 and 1973, constitute income (includable under sec. 61(a)) or gifts (excludable under sec. 102(a)); (2) Whether petitioner is liable for additions to tax under sections 6651(a)(1) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated, the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in the instant case was filed, petitioner *610 resided in Imperial, Missouri. During 1972 and 1973, petitioner was employed by Valley Steel Products Company (hereinafter sometimes referred to as "Valley"). She was paid wages of $2,529 in 1972 and $4,953 in 1973 by Valley. At this time, Lester A. Crancer, Sr. (hereinafter sometimes referred to as "Crancer"), owned stock in Valley. Petitioner worked as a secretary for Crancer. On September 21, 1972, Crancer bought a residence located at 6747 Walsh, St. Louis, Missouri (hereinafter sometimes referred to as "the Walsh residence"), for $28,500 and caused petitioner to be named as the grantee in the deed. Petitioner began residing in the Walsh residence in September 1972. She lived there with her sister, brother-in-law, and niece. On or about October 29, 1974, petitioner sold the Walsh residence. The Walsh residence is an eight-room ranch style house. In one of the bedrooms, petitioner kept a typewriter, a telephone, and some filing cabinets for Crancer and Valley. These items were returned to Valley in 1975, in connection with the settlement of petitioner's suit against Crancer's estate described infra.
During 1972, in addition to the Walsh residence, Crancer transferred money *611 to petitioner. During January through September 1973, Crancer gave petitioner 60 checks, totalling $9,214, each of which petitioner endorsed and cashed. Thirty-two of the checks are in the amount of $75, 14 are in amounts less than $75, and 14 are in amounts greater than $75. Of the $9,214 petitioner received from Crancer in 1973, $3,700 was promptly used by petitioner as a downpayment on her parents' purchase of a house. During part of 1973, Crancer provided petitioner with the use of a leased automobile. During 1972 and 1973, petitioner provided companionship to Crancer, a married man in his late 60's. He was a frequent guest at the Walsh residence. Crancer's relationship to petitioner was based on his desire to be in the company of young people generally, and not solely in the company of petitioner. Crancer died testate on October 3, 1973. On April 9, 1974, petitioner, who was then known as Cathy Surwillo, filed a petition in the Circuit Court of the County of St. Louis, Missouri, in the case of Cathy Surwillo vs. Estate of Lester A. Crancer, seeking $7,000,000 from Crancer's estate. Petitioner's attorney in that action was W. Morris Taylor (hereinafter sometimes referred *612 to as "Taylor"). Taylor filed an amended petition in that action on January 6, 1975; the amended petition is, in all respects relevant to the instant case, substantially identical to the original petition. The amended petition provides, in pertinent part, as follows: COUNT I
* * * 4. That on or about June 27, 1970, in the City of St. Louis, State of Missouri, Plaintiff [petitioner in the instant case] and deceased, Lester A. Crancer, entered into an oral agreement in which deceased on his part agreed and contracted to make a will containing a specific provision providing a bequest to Plaintiff in the amount of One Million ($1,000,000.00) Dollars cash, or stock equivalent to that amount of money, to be paid to Plaintiff upon the death of said Lester A. Crancer; that Plaintiff, on her part, agreed to remain single and not marry or become engaged to any other man without the consent of Lester A. Crancer, deceased, during the remainder of said decedent's lifetime; that Plaintiff did pursuant to this agreement break an engagement to be married; that Plaintiff agreed that she would not attempt to obtain employment during the lifetime of said decedent without his express consent; that *613 Plaintiff agreed to remain at said decedent's complete disposal and, at his will, she was to be available at any and all times he desired to be with her or converse with her and was to provide him with friendship, conversation, companionship, love, affection and to assume the responsibilities of caring for said decedent in the same manner as a wife at any and all times said decedent so desired and requested Plaintiff to do so for the remainder of deceased's life; that Plaintiff agreed that she would never abandon or leave said decedent or fail to provide the above stated companionship, pleasures and desires to decedent without the consent of said decedent during the remainder of his life. 5. That Plaintiff did in fact enter into the performance of said contract from and after the above said date and did provide for deceased and perform all of the duties, obligations, conditions and considerations required of her by the terms of the above said contract with deceased during all of the above stated time. 6. That Lester a. Crancer, deceased, did die on the third day of October, 1973, having made no provision whatsoever in his Last Will and Testament or otherwise to provide, transfer, *614 bequeath or give to Plaintiff one-half of his estate, both real and personal property possessed by him at the time of his death, nor did he provide for any other form, manner or means of payment to Plaintiff for the above said services rendered to said deceased. * * * 8. Tht by reason of deceased's failure to perform the said contract on his part as above stated, Plaintiff has been damaged in the sum of One Million ($1,000,000) Dollars, no part of which has been paid. WHEREFORE, Plaintiff prays judgment against Defendant, executors of the estate of Lester A. Crancer, in the sum of One Million ($1,000,000.00) Dollars on Count I of this her Petition and for costs of this action and interest from the date hereof and for such other and further relief as to this Court shall seem meet, just and proper. COUNT II
Comes now Plaintiff and, pleading in the alternative and not to the exclusion of Count I of this Petition for her cause of action in Count II states and alleges as follows: * * * 2. That on June 27, 1970, Lester A. Crancer, deceased and Plaintiff entered into an oral agreement by which it was agreed that Plaintiff on her part was to remain single and not marry or become engaged *615 to any other man without the consent of Lester A. Crancer, deceased, during the remainder of said decedent's life; that Plaintiff was to break her then current engagement to another man, which she did at deceased's request. Plaintiff agreed that she would not attempt to obtain employment during the lifetime of said decedent without his express consent. Plaintiff agreed to remain at said decedent's complete disposal and, at his will, she was to be available at any and all times he desired to be with her or converse with her and to provide him with friendship, conversation, companionship, love, affection and to assume the responsibilities of caring for said decedent in the same manner as a wife and in her place and at any and all times said decedent so desired and requested Plaintiff to do so for the remainder of deceased's life. Plaintiff agreed that she would never abandon or leave said decedent or fail to provide the above stated companionship, pleasures and desires to decedent during the remainder of his life. Plaintiff agreed to provide a complete household for the decedent and to provide him with hospitality, love and affection in said household as though it were his own home at *616 any time he requested during the remainder of said decedent's life. Deceased, Lester A. Crancer, on his part agreed to make a specific provision in his Last Will and Testament providing payment for the services, love and affection, companionship, loyalty, and for looking after his comfort and general welfare; the terms of that agreement were that decedent would, upon his death, leave a will, leaving to Plaintiff one-half of all of the property, both real and personal, possessed by him at the time of his death. 3. Plaintiff accepted the terms and conditions of said contract and agreement and has fully and faithfully performed all of the terms and conditions of said contract and agreement on her part to be performed. 4. That Lester A. Crancer, deceased, did die on the third day of October 1973, having made no provision whatsoever in his Last Will and Testament or otherwise to provide, transfer, bequeath or give to Plaintiff one-half of his estate, both real and personal property possessed by him at the time of his death, nor did he provide for any other form, manner or means of payment to Plaintiff for the above said services rendered to said deceased. * * * 6. That the reasonable *617 value of the said services, love, affection, loyalty, comfort, friendship, conversation, companionship and pleasure, rendered by Plaintiff, for and at the request of Lester A. Crancer, deceased, is Six Million ($6,000,000.00) Dollars. 7. That no part of said sum has been paid to Plaintiff and that the Defendants and both of them, executors of the estate of Lester A. Crancer, deceased, have refused and continue to refuse to pay Plaintiff any sum of money. WHEREFORE, Plaintiff prays judgment against Defendants on Court II of this her Petition for the Value of her services rendered in the amount of Six Million ($6,000,000.00) Dollars, and interest from date hereof, and costs of these proceedings, and for such other and further relief as to this Court shall seem meet, just and proper. On September 23, 1975, petitioner entered into an agreement styled "SETTLEMENT AGREEMENT AND RELEASE" (hereinafter sometimes referred to as "the settlement agreement") with Crancer's estate. The settlement agreement provides, in pertinent part, as follows: WHEREAS, Surwillo [petitioner in the instant case] filed that certain Claim and Notice of Filing and Hearing Thereof in the Probate Court of the County *618 of St. Louis in said probate matter No. 47174 on or about the 9th day of April, 1974 whereby claimant, Surwillo, filed claim for payment for services rendered and various other items in which claimant sought recompense in the total amount of $6,000,000; and WHEREAS, Executors recognize the obligation of the Estate of Lester A. Crancer to Surwillo for various services provided by Surwillo during decedent's lifetime which included providing and maintaining office assistance, custodian and administration services in connection therewith, and services in connection with his individual business interests and that the quantummeruit value of these services is not less than $42,500; and WHEREAS, Executors, in due course, objected to payment for all other items listed in Surwillo's claim and that Surwillo agrees that her claim is only valid for those services rendered to the decedent as above set out in the reasonable amount of $42,500; NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements, waivers and releases hereinafter contained, it is covenanted and agreed as follows: 1. Executors and Surwillo hereby covenant and agree that that claim of Surwillo *619 for services rendered unto and on behalf of the decedent in the reasonable amount of $42,500 is a valid claim and represents the personal obligation of the decedent existing at the time of his death. 2. This Agreement has been executed by the Executors subject to the approval of the Probate Court of the County of St. Louis, Missouri, which approval the Executors agree to seek forthwith and use their best efforts to obtain; but in the event that said Executors are unable to obtain such approval, after making a reasonable effort so to do, then in that event this Agreement shall be null and void, and binding upon none of the parties hereto. 3. Surwillo agrees to deliver to the Executors all correspondence, notes and other communications by and with the decedent which are or have been in her possession since decedent's death. 4. By executing this Agreement if the same is approved by the Probate Court of the County of St. Louis, Missouri, each of the parties hereto agree that they have and do hereby release and forever discharge each other from any and all claims, actions or causes of action which they may now have or may have had in general or specific of any nature and not limited *620 to those items arising out of the claim of Surwillo filed in the Probate Court on or about the 9th day of April, 1974. * * * On or about September 23, 1975, the Probate Court referred to in the settlement agreement allowed petitioner's claim. Petitioner dismissed her Circuit Court suit with prejudice at Crancer's estate's cost. Petitioner was given a check for $42,500 by Crancer's estate pursuant to the settlement agreement. Petitioner endorsed the check and gave it to Taylor. After deducting attorney fees and litigation expenses, Taylor paid $19,000 to petitioner as her share of the settlement proceeds. On petitioner's 1972 tax return, she reported gross income of $2,529, consisting solely of her wages from Valley. On her 1973 tax return, she reported gross income of $4,953, consisting solely of her wages from Valley. Petitioner's 1972 tax return was filed on April 15, 1973; her 1973 tax return was filed on April 15, 1974. On March 1, 1976, and December 13, 1976, respondent mailed notices of deficiency to petitioner for 1972 and 1973, respectively. The notices determined that petitioner received $47,704 from Crancer in 1972, and $9,214 in 1973, and that these amounts constituted *621 taxable income. The notices were not, in fact, received by petitioner and were held to be invalid in Austin v. Voskuil,493 F.Supp. 780 (E.D. No. 1980). In the spring of 1977, an Internal Revenue Service employee contacted petitioner in connection with her 1972 and 1973 tax returns. This was the first indication petitioner had that respondent was auditing her 1972 and 1973 tax returns. Petitioner then contacted Taylor, who informed her that he was not a tax lawyer and referred her to Jerry Suddarth (hereinafter sometimes referred to as "Suddarth"). Suddarth subsequently represented petitioner before the Internal Revenue Service. Sometime before March 3, 1979, petitioner discharged Suddarth and engaged a third attorney, Murry A. Marks (hereinafter sometimes referred to as "Masks"), to represent her in connection with her 1972, 1973, and 1975 Federal tax liabilities. Marks advised petitioner to file a 1975 tax return reporting as income the $19,000 net amount petitioner received from Crancer's estate. Petitioner filed her 1975 tax return on March 5, 1979. Marks took the position that the amounts received by petitioner from Crancer in 1972 and 1973 were gifts. On petitioner's *622 1975 tax return, her tax liability is computed by using income averaging. In the income averaging calculation, the based period income consists of the amounts shown on petitioner's 1972 and 1973 tax returns. The $179.71 amount determined by respondent in the notice of deficiency in the instant case as the addition to tax for 1975 under section 6651(a)(1) is attributable to the 1975 deficiency that is determined in the notice of deficiency in the instant case. * * * The money and property received by petitioner from Crancer in 1972 and 1973 were gifts; the money received by petitioner from Crancer's estate in 1975 was compensation. OPINION I. Deficiencies
Respondent contends that petitioner received $47,704 (consisting of the Walsh residence, valued at $28,500, and $19,204 in cash or checks) from Crancer in 1972; and that this $47,704, as well as $9,214 from Crancer in 1973 and $42,500 from Crancer's estate in 1975, all constitute compensation for services rendered to Crancer which is taxable under section 61(a)(1). [3] Petitioner contends that all the amounts received by her from Crancer during 1972 and 1973 were gifts, excludable from income under section 102. Petitioner also contends *623 that she did not receive more than $3,835 in cash or checks from Crancer during 1972. Altrnately, petitioner contends that, with respect to the $3,700 transferred to her parents in 1973, she acted merely as a conduit between Crancer and her parents; and that the $3,700 is therefore not income to her. We agree with petitioner's first contention. It is well established that compensation for services, in whatever form received, is includable in gross income. Commissioner v. Duberstein,363 U.S. 278 (1960); Old Colony Tr.Co. v. Commissioner,279 U.S. 716 (1929); section 61(a)(1). [4] *624 However, under section 102(a), [5] which is part of subtitle A, the value of property acquired by gift, bequest, devise, or inheritance is excludable from gross income.
We agree with respondent that, in determining whether a transfer is a gift for purposes of section 102, the most critical consideration is the transferor's intent. For a transfer to constitute a gift in the statutory sense, it must proceed from a "'detached and disinterested generosity,' * * * 'out of affection, respect, admiration, charity or like impulses.'" If, on the other hand, a transfer proceeds primarily from "the constraining force of any moral or legal duty," constitutes a reward for "services rendered," or proceeds from "'the incentive of anticipated benefit' of an economic nature," the transfer is not a gift. Commissioner v. duberstein,363 U.S. at 285. This is a question of fact. Commissioner v. Duberstein,363 U.S. at 290. The burden of proof is on petitioner. Hornung v. Commissioner,47 T.C. 428, 438-439 (1967). In the instant case, we must decide what Crancer's intent was *625 in transferring the Walsh residence and various amounts of money to petitioner during 1972 and 1973. This task has been made more difficult than in the ordinary case as a result of the fact that Crancer has died and, thus, could not testify as to his intent. In order to divine Crancer's intent, we must look to the evidence that is in the record and we are mindful of respondent's assertion on brief that he "in no way intends to cast aspersions of moral turpitude upon petitioner." In the settlement agreement, Crancer's estate and petitioner agreed that the $42,500 transfer was a payment "for services rendered [by petitioner] unto and on behalf of" Crancer. No credible evidence in the record substantially contradicts the settlement agreement. We conclude that the 1975 transfer was compensation to petitioner. In order to hold for respondent as to the 1972 and 1973 transfers in accordance with the notice of deficiency, we would have to conclude that Crancer paid petitioner $47,704 for her 1972 services to him and $9,214 for her 1973 services to him (until Crancer's death on October 3, 1973), and that petitioner nevertheless had been undercompensated by $42,500 for these services. We *626 would also have to conclude that these services-- upon which Crancer, Crancer's estate, the Probate Court, and respondent set so high a value--consisted essentially of petitioner's companionship. [6] In order to hold that petitioner properly reported her income, we would have to conclude that petitioner's companionship to Crancer was worth $42,500, and that Crancer's 1972 and 1973 transfers to petitioner stemmed from an intent to make gifts to petitioner and not to pay a quidproquo.
On balance, we incline to the view that the 1975 settlement was the only intended payment of a quidproquo. Based on the peculiar facts and circumstances of the record before us (see, e.g., Spartanburg Terminal Co. v. Commissioner,66 T.C. 916, 928 (1976)), we conclude that, although the matter is not free from doubt, petitioner has succeeded in carrying her burden of proving that it is more likely than not (see, e.g., Popa v. Commissioner,73 T.C. 130 (1979)) that Crancer's 1972 and 1973 transfers *627 to her were gifts and not compensation. Accordingly, petitioner did not have additional income for 1972 and 1973 and petitioner's base period income (see n.3, supra) is not to be increased in applying income averaging for 1975. We hold for petitioner on this issue. II. Additions to Tax
A. 1975--Section 6651(a)(1)
An addition to tax under section 6651(a)(1) is imposed in case of a failure to file a timely tax return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner has the burden of proving error in respondent's determination that such an addition to tax should be imposed against her. Funk v. Commissioner,687 F.2d 264, 266 (CA8 1982), affg. a Memorandum Opinion of this Court [7]; Ehrlich V. Commissioner,31 T.C. 536, 540 (1958). The deficiency for 1975 results solely from respondent's determination that petitioner could not use income averaging to compute her 1975 tax liability. As a result of our holding in Part I, supra, we conclude that petitioner's income averaging computation for 1975 is correct. Consequently, there is no deficiency in income tax for 1975 and, as a purely computational matter, *628 petitioner also prevails as to the addition to tax under section 6651(a)(1) for 1975 determined in the notice of deficiency. We hold for petitioner on this issue. B. 1973 and 1975--Section 6653(a)
An addition to tax under section 6653(a) is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioner has the burden of proving error in respondent's determination that such an addition to tax should be imposed against her. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). With respect to 1973, respondent contends that petitioner was negligent in not reporting as income the $9,214 she received from Crancer. With respect to 1975, respondent contends that petitioner was negligent in failing to include the amounts she received from Crancer as base period income in doing an income averaging computation. As a result of our holding in Part I, supra, we must conclude that petitioner acted properly in both instances. We hold for petitioner on this issue. To reflect the conclusions reached herein and petitioner's concession (see n.2, supra), A decision of no deficiency and no overpayment will be entered.
Footnotes
1. Unless indicated otherwise, all subtitle and section references are to subtitles and sections of the Internal Revenue Code of 1954 as in effect for the years in issue.
2. The claimed overpayment in income tax and an addition to tax under section 6651(a)(1) is not discussed in petitioner's briefs and is deemed to be conceded or abandoned. Henry Schwartz Corp. v. Commissioner,60 T.C. 728, 738 n.3 (1973); Grossman v. Sons, Inc. v. Commissioner,48 T.C. 15, 16 (1967); V.H. Monette & Co. v. Commissioner,45 T.C. 15, 18 (1965), affd. per curiam 374 F.2d 116 (CA4 1967); Hunt v. Commissioner,22 T.C. 228, 229 (1954). Consequently, we need not consider or decide whether we have jurisdiction over the previously assessed addition to tax under section 6651(a)(1), which was based on the income tax liability shown on petitioner's 1975 tax return as filed. See Estate of Young v. Commissioner,81 T.C. 879, 888 (1983); Estate of DiRezza v. Commissioner,78 T.C. 19, 25 (1982). As we find, infra, petitioner's 1973 tax return was filed on April 15, 1974, and the notice of deficiency was mailed on April 14, 1980. Both sides apparently were aware of a possible statute of limitations issue. On brief, respondent notes the issue and states as his defense the contention that the 6-year statute applies under section 6501(e)(1)(A) because petitioner omitted from income the amounts transferred to her by Lester A. Crancer, Sr. As to where the burden of proof on this matter would lie if petitioner had raised the statute of limitations issue in accordance with the Tax Court Rules of Practice and Procedure (Rule 39), see Stratton v. Commissioner,54 T.C. 255, 289↩ (1970), and cases cited therein. Petitioner failed to comply with the Rules in this regard, and so we do not consider the statute of limitations.
3. Although petitioner's Federal individual income tax liability for 1972 is not in issue in the instant case, petitioner's use of income averaging for 1975 requires us to decide that was her correct taxable income for 1972. See section 6214(b); Unser v. Commissioner,59 T.C. 528↩ (1973).
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in * * * subtitle [A], gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items; ↩
5. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule.--Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩
6. We note that Valley paid petitioner $2,529 for her services in 1972 and $4,953 for her services in 1973. Respondent does not contend that Crancer was separately paying petitioner for her services to Valley.↩
7. T.C. Memo. 1981-506↩.